UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
COLONEL A.ADAMS,

                              Plaintiff,                       **MEMORANDUM and ORDER**

        — against —                                          05 CV 5211 (SLT) (LB)

WARNER BROTHERS PICTURES
NETWORK, AND CASTLE ROCK
ENTERTAINMENT, AND DISCOVERY OR
SCIENCE CHANNEL NETWORK,

                             Defendants.
----------------------------------------------------------X

**TOWNES, United States District Judge:**

Plaintiff Colonel A. Adams ("Plaintiff" or "Adams") brings this action *pro se* against Warner Bros. Pictures (incorrectly named as Warner Brothers Pictures Network) ("Warner"), Castle Rock Entertainment, Inc. ("Castle Rock"), and Discovery Communications, Inc. (incorrectly named as Discovery or Science Channel Network) ("Discovery") (collectively "Defendants"), alleging copyright infringement. Defendants now move to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

*A.*   *Procedural History*

On or about November 7, 2005, Plaintiff filed a complaint ("Complaint"), alleging that the animated picture entitled *The Polar Express*, produced, released and distributed by Warner and Castle Rock (the "Motion Picture"), and the episode entitled "Transatlantic Tunnel" of the *Extreme Engineering* television series, produced, broadcast and distributed by Discovery (the

"Episode"), infringed a copyright he claimed to own. Shortly thereafter, on or about November 9, 2005, Plaintiff filed an order to show cause, seeking to enjoin Defendants from producing and distributing the Motion Picture and the Episode.

On November 14, 2005, this Court issued a memorandum and order ("Order") denying Plaintiff's request for a temporary restraining order and preliminary injunction on the ground that Plaintiff failed to make the requisite showing of imminent or irreparable harm. The Order further found that Plaintiff's Complaint failed to state a cognizable claim of copyright infringement because it failed to (a) identify the allegedly infringing work; (b) state that plaintiff owned a valid copyright; or (c) demonstrate how defendants infringed that copyright. The Order provided Plaintiff thirty days to file an amended complaint, failing which his action would be dismissed. On or about December 5, 2005, Plaintiff filed an amended complaint ("Amended Complaint").

In his Amended Complaint, Adams alleges that Defendants committed copyright infringement "by producing movies, dvds, videos, books, and transcripts with [his] design art; U.S. Copyrighted/Registration Number: #Vau-591-803) titled; AIR TRANS SHOOT-TUNNEL AND TRANS SHOOT SHIP SYSTEM, (ATST & TSSS) appearing in them without [his] permission." Adams' Amended Complaint also states that "the following infringed material is titled in the movie The Polar Express; the Pneumatic Tubes, and in the movie Trans Atlantic Tunnel Tube Trains; of which I have copies of both movies on dvds, video, and book photo copies." The Amended Complaint also contains claims for damages, including a request for fifteen billion dollars in actual damages if "statutory damages fail."

B.   *Plaintiff's Copyrighted Design*

On or about June 6, 2003, Adams purportedly filed for copyright protection of a two-dimensional artwork or technical drawing (the "Design") titled "Air Trans Shoot Tunnel and Trans Shoot Ship System (ATST & TSSS)," and was issued Registration No. VAu 591-803. The Design, drawn freehand, appears similar to a space ship standing upright with scaffolding at the sides of the space ship. The Design is cylindrical in shape, tapering off to a blunted point, and bordered with two parallel lines. A rod-shaped line runs through the middle of the cylindrical shape and what appears to be a wheel is placed closer to the blunt point. There is no description other than the title providing any indication of what the Design intends to portray or its purpose or intended application.

C.   *The Polar Express*

*The Polar Express* is an animated Christmas story based on the children's book *The Polar Express* by Chris Van Allsburg, about a young boy who doubts his belief in Santa Claus. On Christmas Eve, the boy awakens to find a steam train in front of his house that takes him and other children to the North Pole to meet Santa. At the North Pole, the boy visits Santa's factory, where he finds frenzied elves monitoring children around the world on television screens and shuttling toys back and forth by riding on pneumatic tubes. The Motion Picture uses state-of-the-art technology to digitally capture the actors' facial expressions, creating an animated style with a unique blend of realism and fantasy. A DVD version of the Motion Picture was released on November 22, 2005, by Warner Home Video, a subsidiary of Warner Bros. Entertainment Inc.

3

In or about August 2004, Chronicle Books published and distributed a tie-in book to the Motion Picture entitled *The Art of the Polar Express* ("the Book"), providing a behind-the-scenes look at the creation of the animation of the Motion Picture. The Book features renderings, drawings, and digitization of those renderings and drawings of various scenes in the Motion Picture. The Book reveals the sources of inspiration for the animation of the Motion Picture, namely, the artwork in the original children's book and actual locations in the Midwest, such as a downtown street in Grand Rapids, Michigan decorated for the Christmas season.

D.     **Extreme Engineering:** *Transatlantic Tunnel*

The Discovery Channel has aired a series entitled *Extreme Engineering*, which features one-hour episodes detailing the world's biggest construction projects. On April 16, 2003, the Episode was premiered. The Episode explored various concepts proposed by engineers for a transatlantic tunnel through which a magnetically-levitated train could travel at speeds up to 5,000 mph, enabling passengers to travel from New York to London in approximately one hour. The Episode provides an in-depth look at the feasibility of building such a tunnel in the near future and the problems that the tunnel's engineers might encounter.

**DISCUSSION**

A.     *Legal Standard*

As the Supreme Court recently held in *Bell Atlantic Corp. v. Twombly*, — U.S. —, —, 127 S. Ct. 1955, — L. Ed. — (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be

granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974 (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl*., 127 S. Ct. at 1965. If a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 1974.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must assume that the allegations in the complaint are true, and draw all reasonable inferences in the plaintiff's favor. *Todd v. Exxon Corp.*, 275 F.3d 191, 197 (2d Cir. 2001). For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000). *See also Hogan v. DC Comics*, 983 F. Supp. 82, 84 (N.D.N.Y. 1997) (concluding that a court must evaluate the underlying works referenced in plaintiff's complaint, even though they are not attached to the complaint, to determine if plaintiff has sufficiently stated a copyright claim). Where a plaintiff appears *pro se,* the Court must "read the pleadings . . . liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted).

### B. *Plaintiff's Copyright Claim Must Be Dismissed*

To establish copyright infringement, a claimant must establish (i) ownership of a valid copyright and (ii) copying of constituent elements of the work that are original. *Feist*

5

*Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991); *see also Williams v. Chrichton,* 84 F.3d 581, 587 (2d Cir. 1996); *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 158 (E.D.N.Y. 2002). Assuming that a plaintiff satisfies the jurisdictional requirement by registering the copyright, the first substantive inquiry the court must make is whether the copyright is valid. *Well-Made Toy.*, 210 F. Supp. 2d at 158. For the purpose of their motion to dismiss, Defendants concede Plaintiff's ownership of a valid copyright.

The second element of the *Feist* test, that a plaintiff prove "copying of constituent elements of the work that are original," requires a two part showing: "A plaintiff with a valid copyright proves infringement by demonstrating that: (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Well-Made Toy.*, 210 F. Supp. 2d at 159 (quoting *Fisher-Price, Inc. v. Well-Made Toy Mfg., Corp.,* 25 F.3d 119, 122-23 (2d Cir. 1994)) (emphasis in original).

### *1. Plaintiff Cannot Show Defendants Copied His Design*

Since direct evidence of copying is rarely possible, copying is generally established by showing that "(1) the defendant had access to the plaintiff's copyrighted work and (2) that defendant's work is substantially similar to the plaintiff's copyrightable material." *Computer Associates Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 701 (2d Cir. 1992)*; see also Fisher-Price, Inc.*, 25 F.3d at 123 (2d Cir. 1994) (finding the works must be "similar enough to support an inference that the defendant copied the plaintiff's work"). In the context of deciding whether the

defendant copied at all (as distinguished from whether it *illegally* copied), similarity relates to the entire work, not just the protectible elements, *Fisher-Price*, *Inc.*, 25 F.3d at 123, and is often referred to as "probative similarity." *See id.*; *see also Eve of Milady v. Moonlight Design Inc.,* 48 U.S.P.Q. 2d 1809, 1812 (S.D.N.Y. 1998); *Merit Diamond Corp. v. Frederick Goldman, Inc.*, 376 F. Supp. 2d 517, 523 (S.D.N.Y. 2005).

"Access means that an alleged infringer had a 'reasonable possibility' – not simply a 'bare possibility' – of hearing [or seeing] the prior work; access cannot be based on mere 'speculation or conjecture.'" *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). Absent a wide dissemination of the infringed work, "access generally needs to be proved by showing a particular chain of events or 'link' by which the alleged infringer might have gained access to the work." *Sylvestre v. Oswald*, No. 91-5060, 1993 WL 179101, at *3 (S.D.N.Y. May 18, 1993); *see also Mowry v. Viacon, Int'l, Inc.*, No. 03-3090, 2005 WL 1793773, at *4 (S.D.N.Y. Jul. 29, 2005).

Plaintiff's Amended Complaint contains no allegations that Defendants had access to Adams' copyrighted Design. Defendants argue that there is not even a possibility that any of the Defendants saw or had a reasonable opportunity to see Adams' Design because Defendants created each of their respective works prior to Adams' copyright registration. According to the Book, the "Tube Car" was created no later than June 2002 and was digitally formatted by February 2003. As aforementioned, the Episode premiered on April 16, 2003. Adams did not file a copyright registration for his Design until June 6, 2003,[1] and does not allege ever having

---

[1] The Court notes that Adams' Design states on it: "Copyright, September 1982." In his memorandum in opposition, Adams denominates this his "date of vision." (Opp. at ¶ 4.)

published, displayed, or distributed his Design prior to his registration.[2] Defendants argue, and the Court agrees, that on this ground alone, this action should be dismissed.

However, even assuming that Adams published, displayed, or distributed his Design prior to the creation of the artwork in the Motion Picture or the production of the Episode, the Court finds there is no probative similarity between the Design and the Motion Picture or Episode and, therefore, the works are not similar enough to support an inference that the Defendants copied Adams' Design.

### *2. There is No Substantial Similarity Between Plaintiff's Design and Defendants' Works*

Even assuming, *arguendo*, that Plaintiff could show that Defendants copied his Design, his claim for copyright infringement must fail because there is no substantial similarity between his Design and the Motion Picture or Episode. In determining whether two works are substantially similar, courts in this Circuit apply the "ordinary observer test," asking "whether a lay observer would consider the works as a whole substantially similar to one another." *Williams*, 84 F.3d at 590. If a work contains both protectible and unprotectible elements,"we must take care to inquire only whether 'the protectible elements, standing alone, are substantially similar.'" *Id.* at 588 (quoting *Knitwaves v. Lollytogs, Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)). If the only similarities between the works concern unprotected elements, plaintiff's case is insufficient as a matter of law. *See Williams,* 84 F.3d at 588-89.

---

[2] Furthermore, Adams concedes in his memorandum in opposition that there has been no widespread dissemination of this Design: "Since June 06, 2003, said design art has not been published." (Opp. at ¶ 5.)

"It is a principle fundamental to copyright law that a copyright does not protect an idea, but only the expression of an idea." *Williams*, 84 F.3d at 587 (internal quotations and citations omitted). Consequently, the Court must determine "whether the similarities shared by the work are something more than mere generalized idea[s] or themes." *Walker v. Time Life Films, Inc*., 784 F.2d 44, 48-49 (2d Cir. 1986) (quoting *Warner Bros. Inc. v. American Broadcasting Cos., Inc.*, 654 F.2d 204, 208 (2d Cir. 1981)). The works must share a similarity of expression, such as "similarities of treatment, details, scenes, events and characterization," *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976), or a similarity in their "total concept and feel." *Williams*, 84 F.3d at 588.

The determination of whether the parties' works are "substantially similar" may be decided by a court as a matter of law. *Warner Bros. Inc. v. American Broadcasting Companies, Inc*., 720 F.2d 231, 240 (2d Cir. 1983). If a court determines that no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities pertain only to unprotected elements of the work, it is appropriate for the court to dismiss the action because, as a matter of law, there is no copyright infringement. *Buckman v. Citicorp*, No. 95-0773, 1996 WL 34158, at *3 (S.D.N.Y. Jan 30, 1996), *aff'd* 101 F.3d 1393 (2d Cir. 1996). Courts in this district have dismissed meritless copyright infringement claims on Rule 12(b)(6) motions where no substantial similarity was found. *See, e.g., Boyle v. Stephens*, *Inc.,* No. 97-1351, 1998 WL 80175, at *4 (S.D.N.Y. Feb 25, 1998); *Bell v. Blaze Magazine*, No. 99-12342, 2001 WL 262718, at *3 (S.D.N.Y. Mar. 16, 2001); *Buckman*, 1996 WL 34158 at *3.

The Court has reviewed the works at issue and finds the "Tube Cars" in the Motion Picture and tunnels featured in the Episode are radically different from Adams' Design. The

9

only similarities that the respective works share is the generalized idea of a transportation tunnel or tube and the basic cylindrical shape. Adams cannot assert ownership over either the idea or the shape. In addition, the "total concept and feel" of the respective works is vastly different. While the Design is crudely drawn by hand and devoid of any color or discernible detail, the "Tube Car" in the Motion Picture is meticulously detailed, vivid, and has been digitally enhanced to mimic a realistic portrayal of an entire futuristic transportation system that consists of tubal tunnels. The tunnels in the Motion Picture are clear, allowing the viewer to see the transport portal running inside. The portal is also translucent, allowing the viewer to see the details of the portal, such as the red-cushioned seating running along the side and middle of the portal and the control panel.

The tunnel featured in the Episode is equally as different from the Design as the tunnel system in the Motion Picture. The renderings of a future underwater transatlantic tunnel that would allow travel by train from New York to London appear to be computer generated in realistic and blueprint formats. The outer shell of the tunnel is to be made of concrete with slim, rectangular windows placed occasionally along the tunnel, and cables or tethers placed throughout various points of the tunnel would anchor the tunnel to the ocean floor. The train that would travel through the tunnel is a magnetically-levitated train already in existence, as that type of train is the only one thus far technologically capable of reaching speeds of over 5,000 mph.

Just as the tunnel in the Motion Picture depicted a high level of detail, so too does the proposed transatlantic tunnel portrayed in the Episode – in complete contrast to the Design. Other than the idea of a transportation tunnel, which is not protectible, the Court finds there is

simply no similarity between the Design and the Motion Picture or Episode. Therefore, Plaintiff's claim of copyright infringement must be dismissed.

## C. *Plaintiff's Unfair Competition Claim Must Fail*

Although not plead in the initial Complaint or Amended Complaint, Adams states in his memorandum in opposition that "Defendants ha[ve] been publishing, selling, and otherwise marketing, the design art entitled: ATST & TSSS and has thereby been engaging in Unfair Trade Practices and Unfair Competition against Plaintiff, causing Irreparable Damages." He requests "that defendants be required to pay plaintiff such damages as plaintiff has submitted in consequence of defendants infringement of said copyright and unfair competition . . ."

To the extent that Adams' memorandum can be construed to raise an allegation of unfair competition under New York state law,[3] such a claim is preempted by federal law. *See NBA v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997) ( "Under 17 U.S.C. § 301 [Copyright Act], a state law claim is preempted when: (i) the state law claim seeks to vindicate 'legal or equitable rights that are equivalent' to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106 . . . and (ii) the particular work to which the state law claim is being applied falls within the type of works protected by the Copyright Act under Sections 102 and 103."). Additionally, the Court's determination that there is no substantial similarity between the two works precludes a finding under New York law that Defendants assembled a product which bears so striking a resemblance to Plaintiff's product that the public will be confused as to the

---

[3] Although a court generally may not look beyond the pleadings when reviewing a Rule 12(b)(6) motion to dismiss, the mandate to read generously the papers of a *pro se* plaintiff makes it appropriate here to consider supplemental materials, such as Plaintiff's memorandum of law. *See Buckman v. Citicorp*, No. 95-0773, 1996 WL 34158, at *1 (S.D.N.Y. Jan. 30, 1996).

identity of the products, which is necessary for a finding of unfair competition in New York. *Hudson v. Universal Pictures Corp.,* No. 03-1008, 2004 WL 1205762, at *4 (E.D.N.Y. April 29, 2004) (citations omitted); *see also Shaw v. Time-Life Records*, 38 N.Y.2d 201, 205, 379 N.Y.S.2d 390 (1975) ("The essence of an unfair competition claim is that the defendant assembled a product which bears so striking a resemblance to the plaintiff's product that the public will be confused as to the identity of the products.").

D.     *Attorney's Fees*

Defendants note that the Copyright Act empowers courts to "award a reasonable attorney's fee to the prevailing party" in an infringement action. 17 U.S.C. § 505. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994), the Supreme Court identified several non-exclusive factors a court should consider in its discretion to award attorney's fees, including frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* at 535 n.19.

Courts in this Circuit have awarded fees to prevailing defendants solely on the basis of objective unreasonableness, even without a showing of bad faith or frivolousness, *see, e.g., Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666-669 (S.D.N.Y. 2001); *Williams v. Chrichton*, 891 F. Supp. 120, 121-22 (S.D.N.Y. 1994); *Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47, 52 (S.D.N.Y. 1994), and Defendants argue that this basis – unreasonableness – supports an award of the prevailing party's attorney fees to Defendants in this case. Recognizing that Plaintiff is proceeding *pro se* and *in forma pauperis*, the Court

declines to award fees at this time. However, Plaintiff is put on notice that fees may be awarded in the future should he attempt to file another such claim.

## CONCLUSION

For the reasons set forth above, Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
June 29, 2007

*Sandra L. Townes*

SANDRA L. TOWNES
United States District Judge